**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BEATS ELECTRONICS, LLC,      ) | |
|      ) | Case No. 14-cv-5209 |
| Plaintiff,      ) | |
|      ) | **Judge Manish S. Shah** |
| v.      ) | |
|      ) | **Magistrate Judge Jeffrey T. Gilbert** |
| THE PARTNERSHIPS and      ) | |
| UNINCORPORATED ASSOCIATIONS      ) | |
| IDENTIFIED ON SCHEDULE "A,"      ) | |
|      ) | |
| Defendants.      ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) DOMAIN NAME
TRANSFER ORDER, (3) ASSET RESTRAINING ORDER, (4) EXPEDITED
DISCOVERY ORDER AND (5) SERVICE OF PROCESS BY E-MAIL AND
<u>ELECTRONIC PUBLICATION ORDER</u>**

Plaintiff Beats Electronics, LLC ("Plaintiff" or "Beats") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, Domain Name Transfer Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by E-mail and Electronic Publication Order (the "*Ex Parte* Motion").

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    STATEMENT OF FACTS ................................................................................. 5
   A.   Beats' Trademarks and Products .............................................................. 5
   B.   Defendants' Unlawful Activities .............................................................. 8

III.   ARGUMENT ................................................................................................ 11
   A.   Standard for Temporary Restraining Order and Preliminary Injunction ........................ 14
   B.   Beats Will Likely Succeed on the Merits ................................................... 15
      i.    Beats Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim. 15
      ii.   Beats Is Likely to Succeed on Its False Designation of Origin Claim ......................... 19
      iii.  Beats Is Likely to Succeed on Its Cybersquatting Claim ................................... 20
         1.   *Beats' BEATS Trademarks Are Distinctive and Famous* ............................... 21
         2.   *Defendants Have Bad Faith Intent to Profit from the BEATS Trademarks* ................. 21
         3.   *The Domain Names Are Identical or Confusingly Similar to or Dilutive of the BEATS
              Trademarks* ........................................................................ 23
      iv.   Beats Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim
              ................................................................................... 23
   C.   There Is No Adequate Remedy at Law and Beats Is Likely to Suffer Irreparable Harm in
        the Absence of Preliminary Relief ........................................................ 24
   D.   The Balancing of Harms Tips in Beats' Favor ............................................... 25
   E.   Issuance of the Injunction Is in the Public Interest ........................................ 26

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 27
   A.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Use of
        Beats' Marks Is Appropriate .............................................................. 28
   B.   An Order Transferring the Defendant Domain Names to Beats' Control Is Appropriate . 29
   C.   An Order Preventing the Fraudulent Transfer of Assets Is Appropriate ......................... 30
   D.   Beats Is Entitled to Expedited Discovery ................................................... 32
   E.   Service of Process by E-mail and Electronic Publication Is Warranted in this Case ........ 33

V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 38

VI.    CONCLUSION ............................................................................. 38

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Abbott Laboratories. v. Mead Johnson & Co.,*
  971 F.2d 6 (7th Cir. 1992) ...........................................................................15

*Abercrombie & Fitch Trading Co. v. 4cheapbags.com,*
  No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished)..................3, 29, 38

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,*
  2013 LEXIS 55218 (C.D. Ill. Apr. 18, 2013) ..................................................20

*American Broadcasting Company v. Maljack Productions, Inc.,*
  34 F. Supp. 2d 665 (N.D. Ill. 1998) ...............................................................24

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
  256 F. App'x 707 (5th Cir. 2007) ...................................................................31

*Beats Electronics, LLC v. The Partnerships, et al.,*
  No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished).............................3, 28

*Board of Directors of Sapphire Bay Condos. W. v. Simpson,*
  129 F. App'x 711 (3d Cir. 2005) ....................................................................29

*Burger King Corp. v. Majeed,*
  805 F. Supp. 994 (S.D. Fla. 1992) .................................................................26

*CAE, Inc. v. Clean Air Eng'g Inc.,*
  267 F.3d 660 (7th Cir. 2001) .....................................................................17, 19

*Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.,*
  No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) .............................2, 28

*Chanel, Inc. v. Paley,*
  No. 3:09-cv-04979-MHP (N.D. Cal. Mar. 25, 2010) (unpublished) ................30

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,*
  No. 1:01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001)......................14

*Chrome Hearts LLC v. The Partnerships, et al.,*
  No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) ...............................3, 28

*Coach, Inc., et al. v. Does 1-100,*
  No. 1:12-cv-08963 (N.D. Ill. Nov. 15, 2012) (unpublished)..................3, 29, 38

*Columbia Pictures Indus., Inc. v. Jasso,*
  927 F. Supp. 1075 (N.D. Ill. 1996) ................................................................12

*CSC Holdings, Inc. v. Redisi,*
  309 F.3d 988 (7th Cir. 2002) .........................................................................31

*Deckers Outdoor Corp. v. Does 1-1,281*,
No. 1:12-cv-01973 (N.D. Ill. April 4, 2012) (unpublished) .............................3, 13, 29, 38

*Deckert v. Independence Shares Corp.*,
311 U.S. 282 (1940)..........................................................................................................31

*Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*,
2010 WL 4877708 (N.D. Ill. 2010) .................................................................................13

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
94 F.3d 376 (7th Cir. 1996) ..............................................................................................17

*Eli Lilly & Co. v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) .............................................................................15, 17, 24, 26

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.*,
96 F. Supp. 2d 824 (N.D. Ill. 2000) .................................................................................14

*Ford Motor Co. v. Lapertosa*,
126 F. Supp. 2d 463 (E.D. Mich. 2000)......................................................................29, 30

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
873 F.2d 985 (7th Cir. 1989) ............................................................................................17

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) ............................................................................................25

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) ............................................................................................32

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*,
527 U.S. 308 (1999)..........................................................................................................31

*Harrods Ltd. v. Sixty Internet Domain Names*,
302 F.3d 214 (4th Cir. 2002) .......................................................................................22, 23

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
560 F.2d 1325 (7th Cir. 1977) ..........................................................................................24

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ............................................................................................38

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) ..........................................................................................24

*Illinois v. Hemi Group LLC*,
622 F.3d 754 (7th Cir. 2010) ............................................................................................14

*International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
846 F.2d 1079 (7th Cir. 1988) ..........................................................................................24

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*,
    540 F.2d 266 (7th Cir. 1976) ...................................................................26

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
    188 F. 3d 427 (7th Cir. 1999) .................................................................20

*Juniper Networks, Inc. v. Bahattab*,
    No. 1:07-cv-01771-PLF-AK, 2008 WL 250584 (D.D.C. Jan. 30, 2008) .........................36

*Kraft Food Holdings, Inc. v. Helm*,
    205 F. Supp. 2d 942 (N.D. Ill. 2002) ........................................................29

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
    866 F. Supp. 585 (D.D.C. 1994) ..............................................................25

*Lamparello v. Falwell*,
    420 F.3d 309 (4th Cir. 2005) ..................................................................23

*In re LDK Solar Secs. Litig.*,
    2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ...................................................37

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997) .................................................................14

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
    51 F.3d 982 (11th Cir. 1995) ..................................................................31

*Libman Co. v. Vining Indus., Inc.*,
    69 F.3d 1360 (7th Cir.1995) ...................................................................18

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*,
    No. 1:03-cv-04844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005) ...................................31

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) .........................................................22

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
    359 F.3d 806 (6th Cir. 2004) ..................................................................20

*Lululemon Athletica Canada Inc. v. The Partnerships, et al.*,
    No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished)..............................3, 28

*Luxottica USA LLC v. The Partnerships, et al.*.
    No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished)..............................3, 28

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*,
    No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ...................................35

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*,
    929 F. Supp. 473 (D.D.C. 1996) ................................................................................26

*Manolo Blahnik International Limited v. The Partnerships, et al.*,
    No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) ...............................3, 28

*Meridian Mutual Insurance Co. v. Meridian Insurance Group, Inc.*,
    128 F.3d 1111 (7th Cir. 1997) .........................................................................24

*Michael Kors, L.L.C. v. The Partnerships, et al.*.
    No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished)...............................2, 28

*NBA Properties, Inc., et al. v. The Partnerships, et al.*,
    No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) ...............................3, 28

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
    No. 1:06-cv-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ....................37

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
    403 F. Supp. 2d 669 (N.D. Ill. 2005) .........................................................16, 20

*Oakley, Inc. v. Does 1-100*,
    No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)........................3, 28, 38

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, 98 S.Ct. 2380 (1978)................................................................32

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ..............................................................37

*Philip Morris USA, Inc. v. Otamedia Ltd.*,
    331 F. Supp. 2d 228 (S.D.N.Y. 2004)...............................................................30

*Polaroid Corp. v. Polarad Electronics Corp.*,
    287 F.2d 492 (2d Cir. 1961)............................................................................16

*Polo Fashions, Inc. v. Craftex, Inc.*,
    816 F.2d 145 (4th Cir.1987) ...........................................................................16

*Popular Enters., LLC v. Webcom Media Group, Inc.*,
    225 F.R.D. 560 (E.D. Tenn. 2004)..............................................................36, 37

*Promatek Industries, Ltd. v. Equitrac Corp.*,
    300 F.3d 808 (7th Cir. 2002) .........................................................................25

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) .........................................................................13

*Rathmann Grp. v. Tanenbaum*,
    889 F.2d 787 (8th Cir. 1989) .........................................................................38

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
    970 F.2d 552 (9th Cir. 1992) ........................................................31

*Re/Max N. Cent., Inc. v. Cook*,
    272 F.3d 424 (7th Cir. 2001) .......................................................24

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ...............................................35, 36

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992) .......................................................18

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
    No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593 (W.D. Va. Mar. 1, 2005)....................26

*Spex, Inc. v. Joy of Spex, Inc.*,
    847 F. Supp. 567 (N.D. Ill. 1994) ................................................23

*Stahly, Inc. v. M.H. Jacobs Co.*,
    183 F.2d 914 (7th Cir. 1950) .......................................................26

*Topps Co., Inc. v. Gerrit J. Verburg Co.*,
    41 U.S.P.Q.2d 1412 (S.D.N.Y.1996).............................................16

*Tory Burch LLC v. Zhong Feng, et al.*,
    No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished)...................3, 29, 38

*Tory Burch LLC v. Yong Sheng Int'l Trade Co., Ltd.*,
    No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) ...............3, 29

*Trans Union LLC v. Credit Research, Inc.*,
    142 F. Supp. 2d 1029 (N.D. Ill. 2001) ..........................................18

*True Religion Apparel, Inc. v. Does 1-100*,
    No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished)....................3, 29, 38

*TY, Inc. v. The Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ..................................................14, 25

*uBID, Inc. v. GoDaddy Group, Inc.*,
    623 F.3d 421 (7th Cir. 2010) .......................................................13

*Vance v. Rumsfeld*,
    No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ...................32

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*,
    238 F.3d 264 (4th Cir. 2001) .......................................................22

*In re Vuitton et Fils, S.A.*,
    606 F.2d 1 (2d Cir. 1979) ...........................................................3

*Wesley–Jessen Division of Schering Corp.v. Bausch & Lomb Inc.*,
    698 F.2d 862 (7th Cir.1983) ............................................... 24

**Federal Statutes**

Fed. R. Civ. P. 4(f)(3) ........................................... 33, 35, 36

Fed. R. Civ. P. 26(b)(2) .................................................. 32

Fed. R. Civ. P. 65 .................................................. 27, 33

Fed. R. Civ. P. 65(b) ............................................... 12, 27

Fed. R. Civ. P. 65(c) ..................................................... 38

Fed. R. Civ. P. 65 (d)(2)(C) ...................................... 4, 27, 33

15 U.S.C. § 1051 ......................................................... 12

15 U.S.C. § 1065 ......................................................... 5

15 U.S.C. § 1114(1) ...................................................... 15

15 U.S.C. § 1116(a) .................................................. 4, 27

15 U.S.C. § 1117 ...................................................... 4, 31

15 U.S.C. § 1125 ......................................................... 22

15 U.S.C. § 1125(a) ...................................................... 19

15 U.S.C. § 1125(d)(1)(A) ............................................... 20

15 U.S.C. § 1125(d)(1)(B)(i) ............................................ 22

17 U.S.C. § 501 .......................................................... 22

28 U.S.C. § 1331 ......................................................... 12

28 U.S.C. § 1338(a)-(b) ................................................. 12

28 U.S.C. § 1367(a) ...................................................... 13

28 U.S.C. § 1391 ......................................................... 13

**Other Authorities**

4 *Callmann on Unfair Competition, Trademarks and Monopolies*
§ 88.3(b) at 205 (3d ed. 1970)................................................................................24

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 30:40 (4th ed. 2013)........................................................................................32

**MEMORANDUM OF LAW**

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Beats Electronics, LLC ("Plaintiff" or "Beats") brings this action against the Partnerships and Unincorporated Associations identified on Schedule "A" to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cybersquatting (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV).  As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products, including headphones, bearing counterfeit versions of Beats' trademarks (collectively, the "Counterfeit Beats Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").  In short, Defendants run a sophisticated counterfeiting operation with reckless disregard for anything except generating profits.

The Defendants create the Defendant Internet Stores by the hundreds or even thousands and design them to appear to be selling genuine Beats products, while actually selling low-quality, unlicensed Counterfeit Beats Products to unknowing consumers.  The Defendant Internet Stores share unique identifiers, such as website design and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their massive counterfeiting operation.  Beats is forced to file these actions to combat Defendants' counterfeiting of Beats' federally

1

registered trademarks, as well as to protect unknowing consumers from purchasing low-quality Counterfeit Beats Products over the Internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Beats Products to consumers within the State of Illinois. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Beats' business within this Judicial District and have caused and will continue to cause irreparable injury to Beats. Defendants deceive the public by trading upon Beats' reputation and goodwill by using interactive websites to sell and/or offer for sale unlicensed Counterfeit Beats Products.

Defendants should not be permitted to continue their unlawful activities, and Beats respectfully requests that this Court issue *ex parte*: (1) a temporary restraining order against Defendants temporarily enjoining the manufacture, importation, distribution, offer for sale and sale of Counterfeit Beats Products; (2) an order temporarily transferring Defendants' Domain Names to Beats so they can be disabled; (3) an order temporarily restricting transfer of Defendants' assets to preserve Beats' right to an equitable accounting; (4) an order for expedited discovery allowing Beats to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale, and sale of Counterfeit Beats Products and Defendants' financial accounts; and (5) an order allowing service by electronic mail and electronic publication at the Defendant Domain Names.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark counterfeiting, courts regularly issue such orders. *See, e.g., Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Granting *ex parte* Temporary Restraining Order); *Calvin Klein*

*Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Int'l Ltd. v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.,* No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same)*; see also, In re Vuitton et Fils*, *S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Beats' well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations establish that issuing a temporary restraining order against Defendants is necessary and proper.   More specifically, Beats can demonstrate a strong

likelihood of success on the merits, as further explained herein. Beats is the owner of numerous trademark registrations, and Defendants' use of counterfeit versions of Beats' federally registered trademarks to sell Counterfeit Beats Products is causing both point-of-sale and post-sale consumer confusion. In addition, Defendants have and continue to irreparably harm Beats through diminished goodwill and damage to Beats' reputation, and there is no amount of money that can compensate Beats for these damages. Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit Beats Products.

In addition, an order authorizing the transfer of the Defendant Domain Names to Beats' control so that they can be disabled is warranted pursuant to 15 U.S.C. § 1116(a) which authorizes this Court "to grant injunctions … to prevent the violation of any right of the registrant of a mark…." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Beats seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by email and electronic publication is proper since Defendants go to great lengths to conceal their identities and operate their business online. In fact, serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.     STATEMENT OF FACTS

### A.  Beats' Trademarks and Products

Plaintiff Beats is well-known throughout the United States and elsewhere as a source of premium quality headphones, earphones, cables and speakers, among other sound transmission products and accessories and audio software (collectively, the "Beats Products").  *See* Declaration of Negin Saberi (the "Saberi Declaration") at ¶ 3.  Beats Products are distributed and sold to consumers through authorized retailers throughout the United States and globally, including Apple, Target, Best Buy, ABT Electronics, Radio Shack and Wal-Mart stores across the country and in Illinois.  *Id.* at 4.  In addition, Beats Products are sold online at the official beatsbydre.com website as well as the official websites for the previously mentioned authorized retailers. *Id.*

Beats has continuously sold sound transmission products under the federally registered Beats trademarks since being co-founded by rap/hip-hop mogul Andre "Dr. Dre" Young and music producer Jimmy Iovine in 2006.  *Id.* at ¶ 5.  In addition to common law trademark rights, Beats holds registrations for its trademarks, including the iconic "b" logo and stylized variations thereof, in many countries around the world, including with the United States Patent and Trademark Office (collectively, "the BEATS Trademarks").  *Id.*  True and correct copies of a representative sampling of Beats' United States Trademark Registrations are attached to the Saberi Declaration as Exhibit 1.  The BEATS Trademarks have been used exclusively and continuously by Beats, some since at least as early as 2006.  *Id.* at ¶ 6.  These registrations are valid and subsisting, and many are incontestable pursuant to 15 U.S.C. § 1065.  *Id.*  Beats has built substantial goodwill in the BEATS Trademarks.  *Id.* at ¶ 7.  The BEATS Trademarks are famous and valuable assets of Beats.  *Id.*

The BEATS Trademarks are exclusive to Beats, and are displayed extensively on Beats Products and in Beats' marketing and promotional materials. *Id.* at ¶ 8. Beats Products are among the most popular headphones and speakers in the United States and the world and have been extensively promoted and advertised at great expense. *Id.* In fact, Beats and its authorized retailers and partners have expended tens of millions of dollars annually on advertising, promoting and marketing featuring the BEATS Trademarks. *Id.* Beats Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. *Id.* Because of these and other factors, the Beats name and the BEATS Trademarks have become famous throughout the United States. *Id.*

The BEATS Trademarks are distinctive when applied to the Beats Products, signifying to the purchaser that the products come from Beats and are manufactured to Beats' quality standards. *Id.* at ¶ 9. Whether Beats manufactures the products itself or licenses others to do so, Beats has ensured that products bearing its trademarks are manufactured to the highest quality standards. *Id.* The BEATS Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. *Id.* As such, the goodwill associated with the BEATS Trademarks is of incalculable and inestimable value to Beats. *Id.*

Musicians and DJs including will.i.am, Lil Wayne, Lady Gaga, Nicki Minaj, David Guetta, Justin Beiber, and P.Diddy have all endorsed different Beats products or have been associated with the brand. *Id.* at ¶ 10. Professional athletes from LeBron James to Serena Williams to Cam Newton are often seen using Beats Products while warming up, sitting in locker rooms, and preparing for competition. *Id.* at ¶ 11. According to ESPN The Magazine, Beats Products are an athlete's must-have accessory. *Id.* The Beats brand has also become a favorite among internationally-known celebrities, many of whom have been photographed wearing Beats

Products, including Miley Cyrus, Eminem, Chris Rock, 2 Chainz, Zedd, Matt Kemp, Zendaya, Kendrick Lamar and Ellie Goulding. *Id.* at ¶ 12. As a result of solicited celebrity endorsement coupled with the unsolicited popularity of the Beats brand among celebrities and others, the red "b" logo  has become iconic, making Beats Products, particularly Beats headphones, a status symbol and a must-have product for millions of young people. *Id.*

Beats' savvy marketing, innovative headphone designs and cutting-edge sound have lead to unprecedented growth in the headphone industry. *Id.* at ¶ 13. A mere four years ago, $59 million worth of premium headphones (those priced $99 and up) were sold in North America. *Id.* In 2012, sales had ballooned to $850 million, and nearly two out of three pairs of headphones carried Beats' authorized iconic "b" logo. *Id.*

Online sales through Beats' website and its authorized online retailers are significant. *Id.* at ¶ 14. Beats has operated a website at beatsbydre.com since it was founded in 2006 and has promoted and sold genuine Beats Products through the e-commerce site since at least 2012. *Id.* The beatsbydre.com website features proprietary content, images and designs exclusive to the Beats brand. *Id.* Beats' official beatsbydre.com website is extraordinarily successful, with annual e-commerce sales totaling in the millions of dollars. *Id.*

Beats' innovative marketing, product designs and leading sound profile have enabled Beats to achieve widespread recognition and fame, and have made the BEATS Trademarks some of the most well-known marks in the headphone, speaker and sound transmission industry. *Id.* at ¶ 15. The widespread fame, outstanding reputation, and significant goodwill associated with the Beats brand have made the BEATS Trademarks invaluable assets of Beats. *Id.*

### B.  Defendants' Unlawful Activities

The overwhelming success of the Beats brand has resulted in its significant counterfeiting.  *Id. at ¶* 16.  Consequently, Beats has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  *Id.*  In recent years, Beats has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Beats Products to consumers in this Judicial District and throughout the United States.  Despite Beats' enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Beats Products.  *Id.*  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  Declaration of Justin Gaudio (the "Gaudio Declaration") at ¶ 2. The U.S. government seized over $1.26 billion in counterfeit goods in 2012, up from $1.11 billion in 2011.  Gaudio Declaration at ¶ 3.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.  Gaudio Declaration at ¶ 4.

Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Beats Products.  Saberi Declaration at ¶ 18.  Defendants' websites and marketplace listings look sophisticated and accept payment in U.S. dollars.  *Id.*  Numerous Defendant Domain Names also incorporate the BEATS Trademarks into the URL, and oftentimes the websites include Beats' copyright-protected content, images, and product descriptions making it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer.  *Id.*

Some of the Defendant Internet Stores even go so far as to admit to selling counterfeit products, explicitly stating that they are offering "replica" or "fake" Beats products for sale. *Id.* at ¶ 17. Beats has not licensed or authorized Defendants to use any of the BEATS Trademarks, and none of the Defendants are authorized resellers of genuine Beats Products. *Id.* at ¶ 18.

The Defendant Internet Stores accept payment via Western Union, credit card and/or PayPal and ship the Counterfeit Beats Products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.* at ¶ 19. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers. Gaudio Declaration at ¶ 3. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Saberi Declaration at ¶ 19.

Defendants also deceive unknowing consumers by using the BEATS Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Beats Products. *Id.* at ¶ 20. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics to increase website rank. *Id.* As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine Beats Products. *Id.*

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. *Id.* at ¶ 21. Many of Defendants' names and addresses used to register the Defendant Internet

Stores are incomplete, contain randomly typed letters, or fail to include cities or states. *Id.* Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. *Id.* On information and belief, Defendants constantly create new Defendant Internet Stores using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendant Internet Store registration patterns are one of many tactics used by the Defendants to conceal both their identities and the full scope and interworking of their massive counterfeiting operation. *Id.* Another tactic commonly used by Defendants to thwart enforcement efforts is to constantly change the location to which the Defendant Domain Names redirect. *Id.* As such, Beats also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Beats Products.

Even though Defendants operate under multiple fictitious names, many similarities between the Defendant Internet Stores indicate a coordinated effort to sell Counterfeit Beats Products. *Id.* at ¶ 22. For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names. *Id.* In addition, Counterfeit Beats Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Beats Products were manufactured by and come from a common source and that Defendants are interrelated. *Id.* The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting

services, similar name servers, and the use of the same text and images, including content copied from Beats' official beatsbydre.com website.  *Id.*

      Beats' well-pleaded allegations regarding patterns and similarities between the Defendant Internet Stores establish a logical relationship between the Defendants and that, on information and belief, Defendants are an interrelated group of counterfeiters.  On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the BEATS Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  As indicated above, tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Beats to learn Defendants' true identities and the exact interworking of their massive counterfeit network.  In the event that Defendants and/or third party service providers provide additional credible information regarding the identities of Defendants, Beats will take appropriate steps to amend the Complaint.

## III.    ARGUMENT

      Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Beats' reputation and the goodwill symbolized by the BEATS Trademarks.  To stop Defendants' sale of Counterfeit Beats Products, Beats respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendant Domain Names to Beats to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets.  Without the relief requested by Beats' instant Motion, Defendants' activities will continue unabated, and Beats and consumers will suffer enormous irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell and sell goods bearing counterfeits of the BEATS Trademarks via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Beats by deceiving consumers into believing that the goods for sale on Defendants' websites are sponsored or endorsed by Beats. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the BEATS Trademarks and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. In addition, courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Beats respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws

of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Beats' business within this Judicial District. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Beats Products to consumers within the State of Illinois. *See* Complaint at ¶¶ 2, 4, 9, 17 and 18. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademarks without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales … for purposes

13

of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in fact, knowingly did do business with Illinois residents by selling products to Illinois residents); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (personal jurisdiction properly asserted against defendants who offered to sell and sold counterfeit products to Illinois residents through an Internet website). Furthermore, Defendants' use of the Beats Trademarks on the Defendant Internet Stores to sell counterfeit goods is sufficient to establish liability under the Lanham Act even if the goods were not shipped to Illinois. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 830 (N.D. Ill. 2000); *accord Levi Strauss v. Shilon,* 121 F.3d 1309, 1312 (9th Cir. 1997).

Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Online Marketplace Accounts, each of the Defendants has targeted sales from Illinois residents by offering shipping to Illinois and, on information and belief, has sold Counterfeit Beats Products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Beats substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### B. Beats Will Likely Succeed on the Merits

i. Beats Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Beats must show that: (1) its marks are distinctive enough to be worthy of protection, (2) Defendants are not authorized to use the BEATS Trademarks, and (3)

Defendants' use of the BEATS Trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Beats satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Beats' BEATS Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The BEATS Trademarks have been used exclusively and continuously by Beats for years, some since at least as early as 2006. Saberi Declaration at ¶ 6. Furthermore, Beats has not licensed or authorized Defendants to use any of the BEATS Trademarks, and none of the Defendants are authorized resellers of genuine Beats Products. *Id.* at ¶ 18.

Beats satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.,* 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent

of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Beats plainly satisfies the likelihood of confusion test. The Defendants are selling low-quality counterfeit versions of products that look similar to Beats Products and use counterfeit marks identical to the BEATS Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Beats.

Beats also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id.* Here, both Beats and Defendants advertise and sell their products to consumers via the Internet. Both parties use the same means and the same channels of commerce to target the same Internet consumers looking for genuine Beats Products. The Defendant Internet Stores advertise and sell Counterfeit Beats Products online, just as Beats advertises and sells its genuine Beats Products online at beatsbydre.com. Thus, because Defendants target the same Internet consumers by the same means as Beats, this factor also weighs heavily in favor of Beats.

Regarding the fourth factor, degree of consumer care, consumers purchasing Beats Products are not a certain, specialized group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union, LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001). In addition, genuine Beats Products are routinely priced from approximately $99.95 - $399.95. The Counterfeit Beats Products offered for sale on the Defendant Internet Stores are typically priced slightly below standard retail prices, making it very difficult for consumers to determine that the products are counterfeit. Taking into account the diverse group of Beats consumers and the closely related pricing schemes between the Counterfeit Beats Products and the genuine Beats Products, consumers are very likely to be confused, so this factor favors Beats.

Due to their long-standing use and wide acceptance by the public, the BEATS Trademarks have become famous and associated with high quality Beats Products. The BEATS Trademarks are distinctive when applied to the Beats Products. The marks signify to consumers that the products come from Beats and are manufactured to the highest quality standards. Consumers have come to recognize the Beats brand as a source of high-performance headphones, earphones, cables and speakers, among other sound transmission products, accessories and audio software. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Beats.

As for the sixth factor, Beats does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh

Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling counterfeit versions of Beats Products that use counterfeit versions of the federally registered BEATS Trademarks. Because the goods look nearly identical, consumers will be confused and think that Defendants' Counterfeit Beats Products are genuine Beats Products or are sponsored or endorsed by Beats. This factor weighs in favor of Beats.

In addition to point-of-sale confusion about the source of products sold on the Defendant Internet Stores, the Seventh Circuit has recognized that the Lanham Act's protections also extend to post-sale confusion of potential customers. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 683 (7th Cir. 2001). Post-sale confusion refers to a situation in which, for example, a potential customer sees a product bearing the infringing label and mistakenly attributes the product to the brand owner, thereby influencing his buying decision, either positively or negatively. *Id.* That association also constitutes infringement of Beats' registered BEATS Trademarks. *Id.*

Regarding the seventh and final factor, Defendants are intentionally using the BEATS Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Beats Products are manufactured by or emanate from Beats. Defendants are purposefully attempting to benefit and trade off of Beats' goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Beats' favor.

In sum, it is manifestly clear that each of the seven likelihood of confusion factors weighs heavily in favor of Beats, and, therefore, Beats has proven that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

ii. <u>Beats Is Likely to Succeed on Its False Designation of Origin Claim</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will

exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684-685. Because the BEATS Trademarks are registered marks, and Beats has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), a likelihood of success on the merits for Beats' false designation of origin claim is also established.

### iii. Beats Is Likely to Succeed on Its Cybersquatting Claim

Beats is also likely to succeed on its cybersquatting claim against the Defendant Domain Names incorporating the BEATS word mark. Pursuant to the Anticybersquatting Consumer Protection Act of 1996 (ACPA), a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: (i) has a bad faith intent to profit from the mark; and (ii) registers, traffics in, or uses a domain name that … is identical or confusingly similar to or dilutive of a mark that is distinctive or famous. 15 U.S.C. § 1125(d)(1)(A). In such cases, in addition to other damages, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).

Courts have often noted that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site … [and] target distinctive marks to defraud consumers." *Lucas Nursery & Landscaping, Inc. v. Grosse,* 359 F.3d 806, 809 (6th Cir. 2004).

### 1. Beats' BEATS Trademarks Are Distinctive and Famous

Beats' BEATS Trademarks are inherently distinctive and famous with consumers in the U.S. and worldwide. As noted above, Beats, its authorized resellers and partners have invested tens of millions of dollars in marketing and promoting its BEATS Trademarks in the United States and throughout the world. Celebrities and consumers alike identify the BEATS Trademarks with Beats' high-performance headphones, speakers and other products. In view of this, and the fact that the BEATS Trademarks are registered with the United States Patent and Trademark Office on the Principal Register, Beats is likely to succeed in showing that its BEATS Trademarks are distinctive and/or famous.

### 2. Defendants Have Bad Faith Intent to Profit from the BEATS Trademarks

Pursuant to the ACPA, a court may consider a myriad of factors when determining whether a person has bad faith intent to profit from a mark, including the following nine enumerated factors: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site … that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used … the domain name in the bona fide offering of any goods or services; (7) the person's provision of material and misleading false contact information when

applying for the registration of the domain name; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to the marks of others; and (9) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.  15 U.S.C. § 1125(d)(1)(B)(i).

A court is not limited, however, to considering the nine enumerated factors when determining the presence or absence of bad faith.  15 U.S.C. § 1125(d)(1)(B)(i).  Indeed, the factors are "expressly described as indicia that 'may' be considered along with other facts." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (citation omitted).  The ACPA allows a court to view the totality of the circumstances in making the bad faith determination.  *Id.* at 270.  Federal courts recognize that "there is no simple formula for evaluating and weighing these factors."  *See, e.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 234 (4th Cir. 2002).  However, courts have held that the registration of a domain name incorporating a trademark owner's mark and being used to sell counterfeit versions of the trademark owner's goods is a particularly egregious form of bad faith.  *See, e.g. Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002).

In the instant case, it is manifestly clear that the Defendants have acted with bad faith intent to profit from Beats' distinctive and famous BEATS Trademarks.  Many of the Defendant Domain Names incorporate the BEATS word mark in its entirety in the URLs, and the corresponding websites use the BEATS Trademarks and copyright-protected content, images, and product descriptions without authorization to sell Counterfeit Beats Products.  This is a clear violation of United States law, including Section 1125 of the Trademark Act (15 U.S.C. § 1125) (§ 43 of the Lanham Act) and Section 501 of the Copyright Act (17 U.S.C. § 501).

3. *The Domain Names Are Identical or Confusingly Similar to or Dilutive of the BEATS Trademarks*

When dealing with domain names, a court must evaluate an allegedly infringing domain name in conjunction with the content of the website identified by the domain name. *Lamparello v. Falwell*, 420 F.3d 309, 316 (4th Cir. 2005). Here, there can be no question that many of the Defendant Domain Names are identical or confusingly similar to the BEATS Trademarks. Beats' BEATS Trademarks appear without alteration in many of the Defendant Domain Names, clearly referring to the Beats brand. Moreover, as noted above, Defendants design their websites so that they look like authorized online retailers or outlet stores selling genuine Beats Products. Defendants perpetuate this illusion by using domain names incorporating Beats' registered trademarks and using Beats' copyright-protected photos and other images showing genuine Beats Products with detailed product descriptions (often copied and pasted directly from Beats' own website at beatsbydre.com).

In addition, courts have found that the addition of generic or geographic terms, such as "shop," "online" and "store" are not sufficient to distinguish the domain name from a protected mark incorporated therein. *Harrods*, 302 F.3d at 247. As such, the Defendant Domain Names that incorporate any of the BEATS Trademarks are identical and/or confusingly similar to the BEATS Trademarks.

iv. Beats Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois

Uniform Deceptive Trade Practices Act.  *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 680-681 (N.D. Ill. 1998).  Because Beats has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), and the standard is the same under Illinois law, Beats has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### C.  There Is No Adequate Remedy at Law and Beats Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy."  *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983).  Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages."  *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted).  "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods."  *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970).  As such, monetary damages are likely to be inadequate compensation for such harm.  *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the BEATS Trademarks has and continues to irreparably harm Beats through diminished goodwill and brand confidence, damage to Beats' reputation,

loss of exclusivity, and loss of future sales.  Saberi Declaration at ¶¶ 24-28.  Whereas genuine Beats Products have been hailed for their superior sound quality, Counterfeit Beats Products typically offer poor sound quality and include substandard features.  Oftentimes, consumers are confused after unknowingly purchasing Counterfeit Beats Products online and attempt to return the seemingly defective or substandard Counterfeit Beats Products to authorized Beats retailers. *Id.* at ¶ 23.  The extent of the harm to Beats' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief.  *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").  As such, Beats should be granted preliminary relief.

### D.  The Balancing of Harms Tips in Beats' Favor

As noted above, if the Court is satisfied that Beats has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Beats will suffer if relief is denied.  *TY, Inc.*, 237 F.3d at 895.  As willful infringers, Defendants are entitled to little equitable consideration.  "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."  *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994).  This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or

advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Beats has demonstrated, Defendants have been profiting from the sale of Counterfeit Beats Products. Thus, the balance of equities tips decisively in Beats' favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### E.    Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark law. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Beats' approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Beats seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of the BEATS Trademarks is enjoined, the public, including both consumers and Beats' authorized retailers, will continue to be confused and misled by Defendants' conduct.

For all of these reasons, it is respectfully submitted that granting Beats' Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Use of Beats' BEATS Trademarks Is Appropriate

Beats requests an order requiring the Defendants to immediately cease all use of the BEATS Trademarks or substantially similar marks on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the BEATS Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the BEATS Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Beats is currently unaware of both the true identities and locations of the Defendants, as well as possible other Defendant Internet Stores used to distribute Counterfeit Beats Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g. Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Int'l Ltd. v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.*, No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec.

14, 2012) (unpublished) (same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. April 4, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same); (hereinafter, collectively referred to as the "*Counterfeit Website Cases*"); *see also, Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d at 463 (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites").

### B. An Order Transferring the Defendant Domain Names to Beats' Control Is Appropriate

Beats also seeks an order transferring the Defendant Domain Names to Beats' control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can and often will change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., the Counterfeit Website Cases, supra* at p. 28; *see also Bd. of Dirs. of Sapphire Bay Condos. W. v. Simpson,* 129 F. App'x 711 (3d Cir. 2005) (affirming District Court's granting of

the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); *Chanel, Inc. v. Paley,* No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) (granting temporary restraining order and disabling domain names at issue); *Philip Morris U.S.A., Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's Internet domain names to Plaintiff); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d at 467 (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name ... significantly tarnishes [Plaintiff's] reputation").

As such, Beats respectfully requests that an order requiring the relevant registries and/or registrars for the Defendant Domain Names to transfer the domain names to Beats during the pendency of this case be granted.

### C. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

Beats requests an *ex parte* order restraining Defendants' assets so that Beats' right to an equitable accounting of Defendants' profits from sales of Counterfeit Beats Products is not impaired[1]. Issuing an *ex parte* order will ensure Defendants' compliance. If such an order is not issued in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before an order is issued. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Beats meaningless.

---

[1] Beats has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Beats has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Beats is entitled, "subject to the principles of equity, to recover ... defendant's profits." Beats' Complaint seeks, among other relief, that Defendants account for and pay to Beats all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Beats' request for a prejudgment asset freeze to preserve relief sought by Beats.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940))). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc.* 256 F. App'x at 709; *Levi Strauss & Co.* 51 F.3d at 987; *Reebok Int'l Ltd.* 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate

and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district and across the country regularly issue asset restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., the Counterfeit Website Cases, supra* at p. 28.

Beats has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D. Beats Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, PayPal, and Western Union which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Beats would not know the entities upon whom to serve the order. Beats respectfully requests an *ex parte* Order

allowing expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Beats' Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., the Counterfeit Website Cases, supra* at 28.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65. Beats has worked with the same third parties in previous lawsuits and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Beats' seizure and asset restraint Order may have little meaningful effect without the requested relief. Accordingly, Beats respectfully requests that the expedited discovery be granted.

### E. Service of Process by E-mail and Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Beats requests an order allowing service of process by electronically publishing a link to the Complaint, this Order, and other relevant documents on a website to which the Defendant Domain Names that are transferred to Beats' control will redirect, and by sending an e-mail to the e-mail addresses identified in Schedule A to Beats' Complaint that includes a link to said website. Beats submits that the combination of providing notice via electronic publication and e-mail, along with any notice that

Defendants receive from domain name registrars and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their registrations for the Defendant Domain Names in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Domain Names may be apprised of the pendency of this action. An order allowing service of process solely via e-mail and electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Beats will almost certainly be left without the ability to pursue a final judgment.

According to Section 3.7.7.1 of the Registrar Accreditation Agreement established by the Internet Corporation for Assigned Names and Numbers ("ICANN"), an individual or entity that registers a domain name is required to provide "accurate and reliable contact details and promptly correct and update them during the term of the … registration, including … postal address." *See* Gaudio Declaration at ¶ 5. An investigation of the WhoIs information for each of the respective Defendant Domain Names for which registration information is available reveals that Defendants have ignored the applicable ICANN regulations and provided false physical address information to the domain name registrars in order to avoid full liability. Gaudio Declaration at ¶ 6. For example, many of Defendants' names and addresses used to register the

Defendant Domain Names are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. *Id.* Identical contact information among multiple domain names also suggests that many of the aliases used to register the Defendant Domain Names are used by the same individual or entity. *Id.*

Despite providing false physical addresses, the registrants of the Defendant Domain Names must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Moreover, it is necessary for merchants, such as the registrants of the Defendant Domain Names, who operate entirely online, to visit their Internet Store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee also, e.g., the Counterfeit Website Cases, supra* at p. 28; *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL

5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").  Beats submits that allowing service solely by e-mail and electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Domain Names to conduct their unlawful Internet-based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3).  *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002).  As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process.  *Id.* at 1014.  To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement.  There are no other limitations or requirements.  *Id.*  Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served.  *Id.*  As such, this Court may allow Beats to serve the defendants via electronic publication and e-mail.

Additionally, Beats is unable to determine the exact physical whereabouts or identities of the registrants of the Defendant Domain Names due to their provision of false and incomplete street addresses.  Beats, however, has good cause to suspect the registrants of the respective

Defendant Domain Names are all residents of China. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Gaudio Declaration at ¶ 7. The Hague Convention does not preclude service by email, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.* As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Gaudio Declaration at ¶ 8. As such, Beats respectfully requests this Court's permission to serve Defendants via e-mail and electronic publication.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c).

Because of the strong and unequivocal nature of Beats' evidence of counterfeiting, infringement and unfair competition, Beats respectfully requests that this Court require Beats to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) ($10,000 bond).

## VI.     CONCLUSION

Defendants' counterfeiting operations are irreparably harming Beats' business, its famous Beats brand, and consumers.   Without entry of the requested relief, Defendants' sale of Counterfeit Beats Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Beats Products have been manufactured by or emanate from Beats, when in fact, they have not.  Therefore, entry of an *ex parte* order is necessary to protect Beats' trademark rights, to prevent further harm to Beats and the consuming public, and to preserve the

status quo.   In view of the foregoing and consistent with previous similar cases, Beats respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Beats intends to present a motion for preliminary injunction.

Dated this 9th day of July 2014.                    Respectfully submitted,


                                __/s/ Justin R. Gaudio_____
                                Kevin W. Guynn
                                Amy C. Ziegler
                                Justin R. Gaudio
                                Jessica L. Bloodgood
                                Greer, Burns & Crain, Ltd.
                                300 South Wacker Drive, Suite 2500
                                Chicago, Illinois 60606
                                312.360.0080
                                312.360.9315 (facsimile)
                                kguynn@gbclaw.net
                                aziegler@gbclaw.net
                                jgaudio@gbclaw.net
                                jbloodgood@gbclaw.net

                                *Counsel for Plaintiff Beats Electronics, LLC*